In the Matter of the Application of THE DELAWARE AND HUDSON RAILROAD CORPORATION, Petitioner, for a Certiorari Order to Review Orders and Determinations of the PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent, Requiring Restoration of a Passenger Train on the Railroad of Petitioner between Whitehall, Washington County, and Albany, Albany County.

Third Department, June 27, 1935.

*Joseph Rosch* [*Alfred D. Kelly* of counsel], for the petitioner.

*Charles G. Blakeslee*, for the respondent.

HILL, P. J. Review by certiorari of an order made on December 11, 1934, by the Public Service Commission directing the Delaware and Hudson Railroad Corporation to operate a passenger train from the village of Whitehall, N. Y., to the city of Albany, N. Y., " on a schedule substantially similar to that maintained by

its train No. 68 prior to its discontinuance." For many years before its discontinuance on September 30, 1934, the railroad company had operated this train. It was made up at Whitehall, leaving at about six-thirty in the morning and arriving at Albany, a distance of seventy-seven miles, at about nine o'clock. Whitehall is a village of about 6,000 inhabitants. Its rail service south on week days with this train discontinued is three trains to Albany and one stopping at Troy *en route* to New York. The argument advanced against the discontinuance is that the earliest morning train now leaves Whitehall at nine-fifty-five, arriving in Albany at twelve-eighteen. When train 68 was taken off, the schedule of train 160, made up at Fort Edward, twenty-two miles south of Whitehall, was changed. This had previously left Fort Edward, a village of substantial size, at five-twenty-five in the morning, arriving in Albany at seven-ten. Now it leaves Fort Edward at six-twenty, arriving at Albany at eight-ten. Train 68 had left Fort Edward at seven-thirteen. Between Whitehall and Fort Edward there are three station stops, Comstock, Fort Ann and Smiths Basin. Those desiring to take a morning train from these stations or from Whitehall might suffer some inconvenience in waiting until nine-fifty-five. Persons desiring to take a train from Fort Edward or stations south will be affected but little. The traffic did not require two morning trains. The only substantial change is that the remaining morning train leaves fifty minutes earlier than did former train 68. During September, 1934, the number of persons taking train 68 was: Whitehall, forty; Comstock, twenty-two; Fort Ann, six; Smiths Basin, twelve; an average of three and two-tenths persons per day for the entire twenty-two miles. From a census as to four other days it was learned that on April 28 and 30, 1934, there was an average of one and a half persons per day from each of three stations, with none from Smiths Basin, and on July 30 and 31, 1934, the average was two and a half persons per day from Whitehall and a like number from Comstock, with none from Fort Ann or Smiths Basin. A bus line, holding a certificate of convenience and necessity from the Public Service Commission, runs from Whitehall to Glens Falls with connections to Fort Edward. There has been marked decrease in the use of the railroad by passengers from Whitehall since 1925, when an average of eighty-one persons per day purchased tickets, while in 1933 and 1934 the average was fifteen. The railroad service remained substantially the same during those years. It is computed that the discontinuance of this train will effect a saving of $43,000 a year. The company had a deficit in excess of $10,000,000 as of August 31, 1934. For the year 1932 the deficit amounted to slightly less than

$4,500,000. In 1933 it was over $3,600,000. In 1914 the railroad carried more than 9,000,000 passengers. In 1933 less than 900,000, and for the first eight months of 1934, 550,000. The revenue from the entire system for passengers was over $3,000,000 in 1914. It shrunk to $1,100,000 in 1933.

The State has the right to regulate the conduct of railroads within its borders and may require that reasonable and adequate facilities be provided to serve not only the necessities but the convenience of the communities which are tributary, but the property used is entitled to the full protection of the law and cannot be taken from its owners without just compensation. The State may not, through unreasonable regulation, prevent the company from obtaining a fair return upon the property used in the public service. This would be repugnant to the Constitution of the United States. (*Mississippi Railroad Comm.* v. *Mobile & Ohio R. R. Co.*, 244 U. S. 388.)

The order appears to be arbitrary and unreasonable, when consideration is given to the small number of passengers that used this train from Whitehall to Fort Edward, the financial loss which the company sustains in its general operation and the opportunity to effect a saving by this discontinuance. The convenience of the public will be served reasonably by the remaining trains and the bus lines which parallel the railroad and are operated with the approval and under the control of the State.

The order should be annulled and matter remitted to the Commission, with fifty dollars costs and disbursements.

RHODES, CRAPSER, BLISS and HEFFERNAN, JJ., concur.

Order annulled and matter remitted to the Commission, with fifty dollars costs and disbursements.